Approved, SCAO

| | | |
|---|---|---|
| Original - Court<br>1st Copy- Defendant | | 2nd Copy - Plaintiff<br>3rd Copy -Return |

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>20-013054-NH<br>Hon.Lita Masini Popke |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226                    Court telephone no.: 313-224-2953

| Plaintiff's name(s), address(es), and telephone no(s)<br>Onuwa, Conservator f/Devine Onuwa, Minor,<br>Everestus | v | Defendant's name(s), address(es), and telephone no(s).<br>Tanya Wynn, M.D., P.C. |
|---|---|---|
| **Plaintiff's attorney, bar no., address, and telephone no**<br><br>Brian J. McKeen 34123<br>645 Griswold St Ste 4200<br>Detroit, MI 48226-4210 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains   ☐ is no longer  pending.

Summons section completed by court clerk.      | SUMMONS |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>10/5/2020 | Expiration date*<br>1/4/2021 | Court clerk<br>Cynthia DePaulis |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



| **SUMMONS** |
|---|
| Case No. : **20-013054-NH** |

## PROOF OF SERVICE

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:   (notarization required) |

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                              Date

My commission expires: _____ Signature: _____
                            Date                         Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                    Attachments

_____ on _____
                                         Day, date, time

_____ on behalf of _____.
Signature

Approved; SCAO

| | Original - Court<br>1st Copy- Defendant | 2nd Copy - Plaintiff<br>3rd Copy -Return |
|---|---|---|

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>20-013054-NH<br>Hon.Lita Masini Popke |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226

Court telephone no.: 313-224-2953

| Plaintiff's name(s), address(es), and telephone no(s)<br>Onuwa, Conservator f/Devine Onuwa, Minor,<br>Everestus | v | Defendant's name(s), address(es), and telephone no(s).<br>Wynn, M.D., Tanya R. |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no

Brian J. McKeen 34123
645 Griswold St Ste 4200
Detroit, MI 48226-4210

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS  and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the  complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____ .

The action ☐ remains  ☐ is no longer  pending.

Summons section completed by court clerk.

| SUMMONS |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons  and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>10/5/2020 | Expiration date*<br>1/4/2021 | Court clerk<br>Cynthia DePaulis |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01** (9/19)          **SUMMONS**          MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



| | SUMMONS |
|---|---|
| Case No. : | **20-013054-NH** |

## PROOF OF SERVICE

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE** OR ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required)

Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]),  and that:   (notarization required)

☐ I served personally a copy of the summons and complaint.

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____
List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled $ | Fee $ | |
|---|---|---|---|
| Incorrect address fee $ | Miles traveled $ | Fee $ | Total fee $ |

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____  Signature: _____
Date                                              Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments
_____ on _____
Day, date, time

_____ on behalf of _____.
Signature

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

EVERESTUS ONUWA as Conservator for
DIVINE ONUWA, a minor,

        Plaintiffs,

vs.

OAKWOOD HEALTHCARE, INC. d/b/a
BEAUMONT HOSPITAL, WAYNE,
BEAUMONT HEALTH, RITA P.
ECKENRODE, M.D., P.C., TANYA
WYNN, M.D., P.C., LUNA A.
ALKHAFAJI, M.D., TANYA R. WYNN,
M.D., LEELA SURULI, M.D., RITA P.
ECKENRODE, M.D., CASEY K.
SWISHER, R.N., TERI K. ANDERZAK,
R.N., STACY A. HUGGINS-FERGUSON,
R.N., RENEE A. MILLER, R.N.,
STEPHANIE M. LAROO, R.N.,
MELODY A. COLE, R.N., and
NICOLE M. HAMPER, R.N.

Jointly & Severally,

        Defendants.

No. 20-    -NH
Hon.

BRIAN J. McKEEN (P34123)
JOHN R. LaPARL (39549)
McKEEN & ASSOCIATES, P.C.
Attorney for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400

## PLAINTIFFS' COMPLAINT AND AFFIDAVITS OF MERITORIOUS CLAIM

There is no other civil action pending, or previously filed and
dismissed, transferred, or otherwise disposed of action arising out of
the transaction or occurrence alleged in the Complaint.

_/s/ Brian J. McKeen_
BRIAN J. McKEEN (P34123)

- 1 -

Cynthia DePaulis   10/5/2020 2:04 PM   WAYNE COUNTY CLERK   Cathy M. Garrett   IN MY OFFICE   FILED   -013054-NH

McKeen & Associates, P.C.  •  645 Griswold Street, Suite 4200  •  Detroit, MI 48226  •  (313) 961-4400

NOW COMES Plaintiff, EVERESTUS ONUWA as Conservator for DIVINE ONUWA, a minor, by and through her attorneys, McKeen & Associates, P.C., and for her Complaint and Demand for Jury Trial, states as follows:

1.      The amount in controversy exceeds Twenty-Five Thousand ($25,000.00) Dollars, excluding costs, interest and attorney fees and is otherwise within the jurisdiction of this court.

2.      The cause of action arose in the County of Wayne, State of Michigan.

3.      Divine Onuwa, a minor, was at all times relevant a resident of the County of Wayne, State of Michigan.

4.      Lucia Chimma Amaechi was at all times relevant a resident of the County of Wayne, State of Michigan

5.      Lucia Chimma Amaechi and Evarestus Onuwa are the natural parents of Divine Onuwa.

6.      Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne was at all times relevant hereto a health institution conducting business in the County of Wayne, State of Michigan.

7.      Beaumont Health was at all times relevant hereto a health institution conducting business in the County of Wayne, State of Michigan.

8.      Rita P. Eckenrode, M.D., P.C. was at all times relevant hereto a health institution that was conducting business in the County of Washtenaw, State of Michigan.

9.      Tanya Wynn, M.D., P.C. was at all times relevant hereto a health institution conducting business in the County of Wayne, State of Michigan.

10.     Tanya R. Wynn, M.D. was at all times relevant hereto a physician conducting business in the County of Wayne, State of Michigan.

11.     Luna A. Alkhafaji, M.D. was at all times relevant hereto a physician conducting business in the County of Wayne, State of Michigan.

- 2 -

12.    Leela Suruli, M.D., was at all times relevant hereto a physician conducting business in the County of Wayne, State of Michigan.

13.    Rita P. Eckenrode, M.D. was at all times relevant hereto a physician who was conducting business in the Counties of Wayne and Washtenaw, State of Michigan.

14.    Casey Swisher, R.N. was at all times relevant hereto a registered nurse conducting business in the County of Wayne, State of Michigan.

15.    Teri K Anderzak, R.N. was at all times relevant hereto a registered nurse conducting business in the County of Wayne, State of Michigan.

16.    Stacy A. Huggins-Ferguson, R.N. was at all times relevant hereto a registered nurse conducting business in the County of Wayne, State of Michigan.

17.    Renee A. Miller, R.N. was at all times relevant hereto a registered nurse who was conducting business in the County of Wayne, State of Michigan.

18.    Stephanie M. Laroo, R.N. was at all times relevant hereto a registered nurse conducting business in the County of Wayne, State of Michigan.

19.    Melody Cole, RN was at all times relevant hereto a registered nurse conducting business in the County of Wayne, State of Michigan.

20.    Nicole M. Hamper, RN was at all times relevant hereto a registered nurse conducting business in the County of Wayne, State of Michigan.

21.    Any and all other nurses who participated in the care and treatment of Lucia Chimma Amaechi, and her eventual newborn, Divine Onuwa, were at all times relevant hereto conducting business in the County of Wayne, State of Michigan.

22.    Any and all physicians, physicians-in-training, and/or physician assistants who participated in the care and treatment of Lucia Chimma Amaechi, and her eventual newborn, Divine Onuwa, were at all times relevant hereto conducting business in the County of Wayne, State of Michigan.

McKeen & Associates, P.C.   •   645 Griswold Street, Suite 4200   •   Detroit, MI 48226   •   (313) 961-4400

- 3 -

23.     On August 21, 2014, at or around 0544, 29-year-old Lucia Chimma Amaechi presented to Oakwood Annapolis, now Beaumont Hospital, Wayne, with abdominal pain that had begun around 0200.

24.     Lucia Chimma Amaechi was G1P0 with a known di/di twin gestation.

25.     Lucia Chimma Amaechi was cared for by healthcare providers including, but not limited to, Casey Swisher, RN, Teri K Anderzak, RN, Stacy A. Huggins-Ferguson, RN, Renee A. Miller, RN, Stephanie M. Laroo, RN, Melody Cole, RN, Tanya R. Wynn, MD, Luna A. Alkhafaji, MD, Leela Suruli, MD, and Rita P. Eckenrode, MD.

26.     Fetal monitoring began at or around 0544, and initially showed two tracings around 140 bpm.

27.     One tracing was reactive with moderate variability, and the other showed minimal variability.

28.     At 0600, Dr. Eckenrode performed an SVE which showed 2.5/50%/-2 station.

29.     At 0602, Dr. Wynn was updated, and the plan was put in place to do a STAT bedside ultrasound and reexamine patients.

30.     The bedside ultrasound was unable to determine the presentation, and fetal heart tones on fetus 'A' were noted to be minimal.

31.     Staff was contacted to do a bedside ultrasound for biophysical profile (BPP) and confirmation of presentation.

32.     At 0722, a BPP was being performed.

33.     The evaluation with BPP was halted prior to completion based on lack of tone, breathing and fetal tracing.

34.     Dr. Eckenrode was called to reexamine her patients, but deferred due to ultrasound being performed.

35.     The BPP revealed a score of 2/8 for baby 'A'.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

- 4 -

36.     The position was breech/transverse.

37.     Around 0731, a decision was made to proceed with a Cesarean-section.

38.     At approximately 0841, baby boy 'A' (Divine Onuwa) was delivered with Apgars of 2/2/2.

39.     Divine was transferred to the University of Michigan for neonatal encephalopathy, arriving at 1105.

40.     An EEG performed showed frequent subclinical seizures.

41.     On August 22, 2014, Divine was less responsive with diffuse hypotonia.

42.     An EEG showed non-convulsive status epilepticus.

43.     Divine was not responsive to external stimulation.

44.     Divine was diagnosed with severe hypoxic-ischemic encephalopathy.

45.     An MRI of the brain performed on or about August 27, 2014, showed multiple foci of prior intraparenchymal and intraventricular hemorrhage within the cerebrum and throughout the cerebellum.

46.     A brain MRI performed on September 4, 2014, was suggestive for extensive changes of hypoxic ischemic encephalopathy given the signal characteristics of gyral laminar necrosis at the depths of sulci at anatomical locations that are not restricted to a given vascular territory.

47.     There was no evidence of new intracranial hemorrhage.

48.     Divine was discharged on October 3, 2014.

49.     The discharge summary noted neonatal encephalopathy with global intracranial insult with seizures s/p 72 hours of therapeutic hypothermia.

50.     MRI revealed diffuse white and gray matter injury consistent with ischemia and possible areas of hemorrhagic injury.

51.     Areas of injury within the brain stem were visualized on MRI as well.

- 5 -

52.     Divine has been diagnosed with cerebral encephalopathy, cerebral palsy quadriplegia, possible right spasticity, neonatal encephalopathy, and neonatal seizures.

53.     Divine receives physical, occupational, and speech therapy.

54.     Divine has hearing and vision loss.

55.     The injuries and associated pain, suffering, and residual damages which resulted from the above-named health care providers' negligent acts have and will deprive Divine Onuwa of a normal childhood and adult life.

### COUNT I: MEDICAL NEGLIGENCE OF TANYA R. WYNN, M.D.

56.     Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

57.     Tanya R. Wynn, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

    a.  Supervise and monitor the care;

    b.  Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

    c.  Recognize the fact that a trial of labor would place Divine at unnecessary risk;

    d.  Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

    e.  Advise Lucia Chimma Amaechi that a Cesarean -section was needed to deliver Divine in order to preserve fetal well-being;

    f.  Ensure that Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean -section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

    g.  Order and perform a Cesarean-section without unnecessary delay;

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

h.  Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

i.  Require that the nurses and resident physicians providing care or treatment to the patients consult with her regarding the patients' conditions, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

j.  Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k.  Perform a review of the fetal monitor strips at regular and proper intervals;

l.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m.  Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n.  Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o.  Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p.  Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q.  Recognize any and all indications for a change in the delivery plan, including, but not limited to, breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a Cesarean-section to be performed without delay;

r.  Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s.  Ensure that the nursing staff was prepared for a Cesarean -section;

t.  Ensure that Divine Onuwa was delivered in a manner that would avoid

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

– 7 –

traumatic injury to her;

u. Ensure that Divine Onuwa was delivered in a timely manner to remove her from the markedly hostile womb environment;

v. Any and all acts of negligence as identified through additional discovery.

58.    Tanya R. Wynn, M.D. did none of these things, and such omissions constitute professional negligence for which she is liable to Plaintiff.

59.    At all times relevant hereto, Tanya R. Wynn, M.D. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, Beaumont Health, and Tanya Wynn, M.D., P.C.; therefore, those Defendants are vicariously liable for the negligence of Tanya R. Wynn, M.D. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

60.    As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

61.    This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

62.    Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

63.    Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

64.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

McKeen & Associates, P.C.   ♦   645 Griswold Street, Suite 4200   ♦   Detroit, MI 48226   ♦   (313) 961-4400

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT II: MEDICAL NEGLIGENCE OF LUNA A. ALKHAFAJI, M.D

65.     Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

66.     Luna A. Alkhafaji, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

    a.  Supervise and monitor the care;

    b.  Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

    c.  Recognize the fact that a trial of labor placed Divine at unnecessary risk;

    d.  Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

    e.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver Divine in order to preserve fetal well-being;

    f.  Ensure that Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean -section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

    g.  Order and perform a Cesarean-section without unnecessary delay;

    h.  Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

    i.  Require that the nurses and resident physicians providing care or treatment to the patients consult with her regarding the patients' conditions, any abnormal clinical findings, and the proposed plan for treatment at regular and proper

McKeen & Associates, P.C.   ◆   645 Griswold Street, Suite 4200   ◆   Detroit, MI 48226   ◆   (313) 961-4400

– 9 –

intervals;

j. Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k. Perform a review of the fetal monitor strips at regular and proper intervals;

l. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m. Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n. Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o. Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p. Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q. Recognize any and all indications for a change in the delivery plan, including, but not limited to, breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a Cesarean-section to be performed without delay;

r. Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s. Ensure that the nursing staff was prepared for a Cesarean-section;

t. Ensure that Divine was delivered in a manner that would avoid traumatic injury to her;

u. Ensure that Divine was delivered in a timely manner to remove her from the markedly hostile womb environment;

v. Any and all acts of negligence as identified through additional discovery.

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

67.    Luna A. Alkhafaji, M.D. did none of these things, and such omissions constitute professional negligence for which she is liable to Plaintiff.

68.    At all times relevant hereto, Luna A. Alkhafaji, M.D. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of Luna A. Alkhafaji, M.D. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

69.    As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

70.    This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

71.    Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

72.    Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

73.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

- 11 -

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

## COUNT III: MEDICAL NEGLIGENCE OF LEELA SURULI, M.D.

74.     Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

75.     Leela Suruli, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

   a.   Supervise and monitor the care;

   b.   Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

   c.   Recognize the fact that a trial of labor placed Divine at unnecessary risk;

   d.   Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

   e.   Advise Lucia Chimma Amaechi that a Cesarean -section was needed to deliver Divine in order to preserve fetal well-being;

   f.   Ensure that Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean -section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

   g.   Order and perform a Cesarean-section without unnecessary delay;

   h.   Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

   i.   Require that the nurses and resident physicians providing care or treatment to the patient consult with her regarding the patients' conditions, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

   j.   Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

   k.   Perform a review of the fetal monitor strips at regular and proper intervals;

   l.   Consistently and correctly assess, monitor, evaluate, and document baseline

- 12 -

McKeen & Associates, P.C.   ♦   645 Griswold Street, Suite 4200   ♦   Detroit, MI 48226   ♦   (313) 961-4400

fetal heart rate, accelerations, decelerations, and beat to beat variability;

m. Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n. Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o. Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p. Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q. Recognize any and all indications for a change in the delivery plan, including, but not limited to, breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a Cesarean-section to be performed without delay;

r. Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s. Ensure that the nursing staff was prepared for a Cesarean-section;

t. Ensure that Divine was delivered in a manner that would avoid traumatic injury;

u. Ensure that Divine was delivered in a timely manner to remove her from the markedly hostile womb environment;

v. Any and all acts of negligence as identified through additional discovery.

76.     Leela Suruli, M.D. did none of these things, and such omissions constitute professional negligence for which she is liable to Plaintiff.

77.     At all times relevant hereto, Leela Suruli, M.D. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health;

McKeen & Associates, P.C. ◆ 645 Griswold Street, Suite 4200 ◆ Detroit, MI 48226 ◆ (313) 961-4400

therefore, those Defendants are vicariously liable for the negligence of Leela Suruli, M.D. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

78.     As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

79.     This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

80.     Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

81.     Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

82.     As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT IV: MEDICAL NEGLIGENCE OF RITA P. ECKENRODE, M.D.

83.     Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

- 14 -

84.    Rita P. Eckenrode, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a.  Supervise and monitor the care;

b.  Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

c.  Recognize the fact that a trial of labor placed Divine at unnecessary risk;

d.  Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

e.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver Divine in order to preserve fetal well-being;

f.  Ensure Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean-section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

g.  Order and perform a Cesarean-section without unnecessary delay;

h.  Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

i.  Require that the nurses and resident physicians providing care or treatment to the patient consult with her regarding the patients' conditions, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

j.  Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k.  Perform a review of the fetal monitor strips at regular and proper intervals;

l.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m. Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

absent variability in the fetal heart rate, and/or fetal tachycardia;

n. Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o. Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p. Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q. Recognize any and all indications for a change in the delivery plan, including, but not limited to, signs breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a Cesarean-section to be performed without delay;

r. Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s. Ensure that the nursing staff was prepared for a Cesarean-section;

t. Ensure that Divine was delivered in a manner that would avoid traumatic injury;

u. Ensure that Divine was delivered in a timely manner to remove her from the markedly hostile womb environment;

v. Any and all acts of negligence as identified through additional discovery.

85. Rita P. Eckenrode, M.D. did none of these things, and such omissions constitute professional negligence for which she is liable to Plaintiff.

86. At all times relevant hereto, Rita P. Eckenrode, M.D. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, Beaumont Health, and Rita P. Eckenrode, M.D., P.C.; therefore, those Defendants are vicariously liable for the negligence of Rita P. Eckenrode, M.D. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

87. As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

88. This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

89. Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

90. Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

91. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

### COUNT V: MEDICAL NEGLIGENCE OF ANY AND ALL NURSES WHO PARTICIPATED IN THE CARE AND TREATMENT OF LUCIA CHIMMA AMAECHI AND HER EVENTUAL NEWBORN, DIVINE ONUWA

92. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

93. Any and all nurses who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, when presented with a patient exhibiting the

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

    a. Perform and appreciate a thorough physical assessment;

    b. Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

    c. Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

    d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

    e. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

    f. Continuously monitor and document the duration, strength, and frequency of uterine contractions;

    g. Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

    h. Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

    i. Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

    j. Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

    k. Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

    l. Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and late decelerations;

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

- 18 -

m. Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n. Utilize the chain of command to ensure that a Cesarean-section was performed;

o. Any and all acts of negligence as identified through additional discovery.

94.     Any and all nurses who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

95.     At all times relevant hereto, any and all nurses who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, were employees, agents, or servants of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of any and all nurses who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa pursuant to the Doctrine of Respondeat Superior and ostensible agency.

96.     As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

97.     This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

98.     Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

99.    Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

100.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT VI: MEDICAL NEGLIGENCE OF ANY AND ALL PHYSICIANS, PHYSICIANS-IN-TRAINING, AND/OR PHYSICIAN ASSISTANTS WHO PARTICIPATED IN THE CARE AND TREATMENT OF LUCIA CHIMMA AMAECHI AND HER EVENTUAL NEWBORN, DIVINE ONUWA

101.    Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

102.    Any and all physicians, physicians-in-training, and/or physician assistants who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

   a.  Supervise and monitor the care;

   b.  Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

   c.  Recognize the fact that a trial of labor placed Divine at unnecessary risk;

   d.  Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

e.   Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver Devine in order to preserve fetal well-being;

f.   Ensure Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean-section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

g.   Order and perform a Cesarean-section without unnecessary delay;

h.   Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

i.   Require that the nurses and resident physicians providing care or treatment to the patient consult with her regarding the patient's condition, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

j.   Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k.   Perform a review of the fetal monitor strips at regular and proper intervals;

l.   Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m.  Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n.   Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o.   Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p.   Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q.   Recognize any and all indications for a change in the delivery plan, including,

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

- 21 -

but not limited to, breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a C-section to be performed without delay;

r.  Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s.  Ensure that the nursing staff was prepared for a Cesarean-section;

t.  Ensure that Divine was delivered in a manner that would avoid traumatic injury to her;

u.  Ensure that Divine was delivered in a timely manner to remove her from the markedly hostile womb environment;

v.  Any and all acts of negligence as identified through additional discovery.

103.    Any and all physicians, physicians-in-training, and/or eventual newborn physician assistants who participated in the care and treatment of Lucia Chimma Amaechi and her, Divine Onuwa did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

104.    At all times relevant hereto, any and all physicians, physicians-in-training, and/or physician assistants who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa were employees, agents, or servants of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, Beaumont Health, Rita P. Eckenrode, M.D., P.C., and Tanya Wynn, M.D., P.C; therefore, those Defendants are vicariously liable for the negligence of any and all physicians, physicians-in-training, and/or physician assistants who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa pursuant to the Doctrine of Respondeat Superior and ostensible agency.

105.    As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

- 22 -

106.    This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

107.    Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

108.    Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

109.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT VII: MEDICAL NEGLIGENCE OF CASEY SWISHER, R.N.

110.    Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

111.    Casey Swisher, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

  a.  Perform and appreciate a thorough physical assessment;

  b.  Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

  c.  Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

- 23 -

d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f. Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g. Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h. Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i. Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j. Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k. Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l. Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m. Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n. Utilize the chain of command to ensure that a Cesarean-section was performed;

o. Any and all acts of negligence as identified through additional discovery.

- 24 -

McKeen & Associates, P.C.   ◆   645 Griswold Street, Suite 4200   ◆   Detroit, MI 48226   ◆   (313) 961-4400

112.    Casey Swisher, R.N. did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

113.    At all times relevant hereto, Casey Swisher, R.N. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of Casey Swisher, R.N. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

114.    As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

115.    This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

116.    Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

117.    Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

118.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

- 25 -

## COUNT VIII: MEDICAL NEGLIGENCE OF TERI K. ANDERZAK, R.N.

119.   Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

120.   Teri K. Anderzak, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

    a.   Perform and appreciate a thorough physical assessment;

    b.   Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

    c.   Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

    d.   Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

    e.   Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

    f.   Continuously monitor and document the duration, strength, and frequency of uterine contractions;

    g.   Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

    h.   Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

    i.   Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

    j.   Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

k. Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l. Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m. Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n. Utilize the chain of command to ensure that a Cesarean-section was performed;

o. Any and all acts of negligence as identified through additional discovery.

121. Teri K. Anderzak, R.N. did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

122. At all times relevant hereto, Teri K. Anderzak, R.N. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of Teri K. Anderzak, R.N. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

123. As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

124. This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

125. Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

McKeen & Associates, P.C. • 645 Griswold Street, Suite 4200 • Detroit MI 48226 • (313) 961-4400

126. Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

127. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby request an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT IX: MEDICAL NEGLIGENCE OF
## STACY A. HUGGINS-FERGUSON, R.N.

128. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

129. Stacy A. Huggins-Ferguson, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a. Perform and appreciate a thorough physical assessment;

b. Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c. Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f. Continuously monitor and document the duration, strength, and frequency of uterine contractions;

McKeen & Associates, P.C. • 645 Griswold Street, Suite 4200 • Detroit, MI 48226 • (313) 961-4400

g.  Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h.  Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i.  Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j.  Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l.  Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n.  Utilize the chain of command to ensure that a Cesarean-section was performed;

o.  Any and all acts of negligence as identified through additional discovery.

130.    Stacy A. Huggins-Ferguson, R.N. did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

131.    At all times relevant hereto, Stacy A. Huggins-Ferguson, R.N. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of Stacy A. Huggins-Ferguson, R.N. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

132.     As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

133.     This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

134.     Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

135.     Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

136.     As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT X: MEDICAL NEGLIGENCE OF RENEE A. MILLER, R.N.

137.     Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

138.     Renee A. Miller, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

  a.   Perform and appreciate a thorough physical assessment;

- 30 -

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

b. Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c. Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f. Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g. Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h. Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i. Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j. Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k. Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l. Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m. Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n. Utilize the chain of command to ensure that a Cesarean-section was

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

performed;

    o.  Any and all acts of negligence as identified through additional discovery.

139.    Renee A. Miller, R.N. did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

140.    At all times relevant hereto, Renee A. Miller, R.N. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of Renee A. Miller, R.N. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

141.    As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

142.    This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

143.    Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

144.    Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

145.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00]

*McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400*

dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT XI: MEDICAL NEGLIGENCE OF STEPHANIE M. LAROO, R.N.

146.    Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

147.    Stephanie M. Laroo, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a. Perform and appreciate a thorough physical assessment;

b. Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c. Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f. Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g. Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h. Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i. Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j. Seek reassurance of fetal well-being when it became apparent that the fetal

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l.  Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n.  Utilize the chain of command to ensure that a Cesarean-section was performed;

o.  Any and all acts of negligence as identified through additional discovery.

148.    Stephanie M. Laroo, R.N. did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

149.    At all times relevant hereto, Stephanie M. Laroo, R.N. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of Stephanie M. Laroo, R.N. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

150.    As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

151.    This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

152. Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

153. Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

154. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT XI: MEDICAL NEGLIGENCE OF MELODY COLE, R.N.

155. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

156. Melody Cole, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

  a. Perform and appreciate a thorough physical assessment;

  b. Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

  c. Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

  d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

- 35 -

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

McKeen & Associates, P.C.  ◆  645 Griswold Street, Suite 4200  ◆  Detroit, MI 48226  ◆  (313) 961-4400

e.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f.  Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g.  Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h.  Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i.  Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j.  Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l.  Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n.  Utilize the chain of command to ensure that a Cesarean-section was performed;

o.  Any and all acts of negligence as identified through additional discovery.

157.  Melody Cole, R.N. did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

158.    At all times relevant hereto, Melody Cole, R.N. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of Melody Cole, R.N. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

159.    As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

160.    This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

161.    Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

162.    Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

163.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT XII: MEDICAL NEGLIGENCE OF NICOLE M. HAMPER, R.N.

164.    Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

- 37 -

165.    Nicole M. Hamper, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a.  Perform and appreciate a thorough physical assessment;

b.  Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c.  Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d.  Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f.  Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g.  Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h.  Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i.  Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j.  Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l.  Recognize the indications for a change in the delivery plan, including, but not

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

- 38 -

limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m. Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n. Utilize the chain of command to ensure that a Cesarean-section was performed;

o. Any and all acts of negligence as identified through additional discovery.

166.   Nicole M. Hamper, R.N. did none of these things, and such omissions constitute professional negligence for which they are liable to Plaintiff.

167.   At all times relevant hereto, Nicole M. Hamper, R.N. was an employee, agent, or servant of Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, and Beaumont Health; therefore, those Defendants are vicariously liable for the negligence of Nicole M. Hamper, R.N. pursuant to the Doctrine of Respondeat Superior and ostensible agency.

168.   As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

169.   This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

170.   Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

171.   Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

McKeen & Associates, P.C.   ●   845 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

172.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT XIII: MEDICAL NEGLIGENCE OF OAKWOOD HEALTHCARE, INC. d/b/a BEAUMONT HOSPITAL, WAYNE

173.    Plaintiff repeat and re-allege the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

174.    Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

   a.   Select, train and monitor its employees, servants, agents, actual or ostensible, or its staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care as described herein;

   b.   Provide qualified medical staff with the proper training and ability to meet Lucia Chimma Amaechi's needs, including the ability to properly manage her prenatal care in accordance with the standard of care described herein;

   c.   Provide proper obstetric services, including, but not limited to, diagnostic testing and monitoring;

   d.   Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Lucia Chimma Amaechi's needs were being met and that she was provided proper obstetrical care in compliance with the standard of care as described herein;

   e.   Any and all acts of negligence as identified through additional discovery.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

175. Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne did none of these things, and such omissions constitute professional negligence for which said Defendant is directly liable to Plaintiff.

176. As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

177. This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

178. Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

179. Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

180. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

McKeen & Associates, P.C. • 645 Griswold Street, Suite 4200 • Detroit, MI 48226 • (313) 961-4400

## COUNT XIV: MEDICAL NEGLIGENCE OF BEAUMONT HEALTH

181. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

182. Beaumont Health, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

    a. Select, train and monitor its employees, servants, agents, actual or ostensible, or its staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care as described herein;

    b. Provide qualified medical staff with the proper training and ability to meet Lucia Chimma Amaechi's needs, including the ability to properly manage her prenatal care in accordance with the standard of care described herein;

    c. Provide proper obstetric services, including, but not limited to, diagnostic testing and monitoring;

    d. Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Lucia Chimma Amaechi's needs were being met and that she was provided proper obstetrical care in compliance with the standard of care as described herein;

    e. Any and all acts of negligence as identified through additional discovery.

183. Beaumont Health did none of these things, and such omissions constitute professional negligence for which said Defendant is directly liable to Plaintiff.

184. As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

185. This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

186.   Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

187.   Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

188.   As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT XIV: MEDICAL NEGLIGENCE OF RITA P. ECKENRODE, M.D., P.C.

189.   Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

190.   Rita P. Eckenrode, M.D., P.C., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

    a.   Select, employ, train and monitor its agents, actual and/or ostensible, servants, employees and/or its staff of physicians, nurses and residents, to ensure they were competent to perform adequate medical care for a patient;

    b.   Ensure that appropriate policies and procedures were adopted and followed;

    c.   Any additional acts of negligence identified through the discovery process.

191.   Rita P. Eckenrode, M.D., P.C. did none of these things, and such omissions constitute professional negligence for which said Defendant is directly liable to Plaintiff.

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

192. As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

193. This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

194. Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

195. Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

196. As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby request an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as well as all other damages allowed under Michigan law.

## COUNT XIV: MEDICAL NEGLIGENCE OF TANYA WYNN, M.D., P.C.

197. Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of Plaintiff's Complaint as though fully incorporated herein.

198. Tanya Wynn, M.D., P.C., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

McKeen & Associates, P.C. ◆ 645 Griswold Street, Suite 4200 ◆ Detroit, MI 48226 ◆ (313) 961-4400

    a.  Select, employ, train and monitor its agents, actual and/or ostensible, servants, employees and/or its staff of physicians, nurses and residents, to ensure they were competent to perform adequate medical care for a patient;

    b.  Ensure that appropriate policies and procedures were adopted and followed;

    c.  Any additional acts of negligence identified through the discovery process.

199.    Tanya Wynn, M.D., P.C. did none of these things, and such omissions constitute professional negligence for which said Defendant is directly liable to Plaintiff.

200.    As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was deprived of the appropriate supply of blood and oxygen.

201.    This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Divine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury.

202.    Due to the severity of this hypoxic-ischemic injury, Divine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech and hearing, and dysphagia.

203.    Divine will require continued medical treatment and rehabilitative therapy for the rest of her life.

204.    As a consequence of the Defendants' negligence, Plaintiff further claims all elements of damages permitted under Michigan's statutory law and common law, whether known now or whether becoming known during the pendency of this case.

WHEREFORE, Plaintiff hereby requests an award of damages against the Defendants herein, jointly and severally, in whatever amount above Twenty-Five Thousand [$25,000.00] dollars that Plaintiff is found to be entitled to, together with costs, interest and attorney's fees, as

well as all other damages allowed under Michigan law.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.


_/s/ Brian J. McKeen_
BRIAN J. McKEEN (P34123)
JOHN R. LaPARL (P39549)
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
DATED: October 5, 2020                               (313) 961-4400

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

- 46 -

**Re: Divine Onuwa, a minor**

## AFFIDAVIT OF MERITORIOUS CLAIM OF ROBERT A. DEIN, M.D.

STATE OF PENNSYLVANIA    )
                                )ss.
COUNTY OF DELAWARE        )

    I, Robert A. Dein, M.D., by this Affidavit, state that during the relevant time period at issue in this matter, I was a licensed and practicing physician, specializing in  and devoting a majority of my professional time for the preceding year to  the clinical practice of Obstetrics and Gynecology, and I attest to the following:

1.    I have read the Notice of Intent to File a Claim in this action.

2.    I have reviewed medical records which allow me to reach the opinions contained herein.

3.    Tanya R. Wynn, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

    a.   Supervise and monitor the care;

    b.   Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

    c.   Recognize the fact that a trial of labor would place Divine at unnecessary risk;

    d.   Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

    e.   Advise Lucia Chimma Amaechi that a Cesarean -section was needed to deliver Divine in order to preserve fetal well-being;

    f.   Ensure that Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean -section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

g.  Order and perform a Cesarean-section without unnecessary delay;

h.  Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

i.  Require that the nurses and resident physicians providing care or treatment to the patients consult with her regarding the patients' conditions, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

j.  Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k.  Perform a review of the fetal monitor strips at regular and proper intervals;

l.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m.  Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n.  Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o.  Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p.  Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q.  Recognize any and all indications for a change in the delivery plan, including, but not limited to, breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a Cesarean-section to be performed without delay;

r.  Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s.  Ensure that the nursing staff was prepared for a Cesarean -section;

    t.  Ensure that Divine Onuwa was delivered in a manner that would avoid traumatic injury to her;

    u.  Ensure that Divine Onuwa was delivered in a timely manner to remove her from the markedly hostile womb environment;

    v.  Any and all acts of negligence as identified through additional discovery.

4.      Luna A. Alkhafaji, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

    a.  Supervise and monitor the care;

    b.  Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

    c.  Recognize the fact that a trial of labor placed Divine at unnecessary risk;

    d.  Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

    e.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver Divine in order to preserve fetal well-being;

    f.  Ensure that Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean -section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

    g.  Order and perform a Cesarean-section without unnecessary delay;

    h.  Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

    i.  Require that the nurses and resident physicians providing care or treatment to the patients consult with her regarding the patients' conditions, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

    j.  Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k.  Perform a review of the fetal monitor strips at regular and proper intervals;

l.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m.  Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n.  Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o.  Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p.  Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q.  Recognize any and all indications for a change in the delivery plan, including, but not limited to, breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a Cesarean-section to be performed without delay;

r.  Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s.  Ensure that the nursing staff was prepared for a Cesarean-section;

t.  Ensure that Divine was delivered in a manner that would avoid traumatic injury to her;

u.  Ensure that Divine was delivered in a timely manner to remove her from the markedly hostile womb environment;

v.  Any and all acts of negligence as identified through additional discovery.

5.  Leela Suruli, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a.  Supervise and monitor the care;

b.  Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

c.  Recognize the fact that a trial of labor placed Divine at unnecessary risk;

d.  Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

e.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver Divine in order to preserve fetal well-being;

f.  Ensure that Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean-section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

g.  Order and perform a Cesarean-section without unnecessary delay;

h.  Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

i.  Require that the nurses and resident physicians providing care or treatment to the patient consult with her regarding the patients' conditions, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

j.  Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k.  Perform a review of the fetal monitor strips at regular and proper intervals;

l.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m.  Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n.  Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o.  Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p.  Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q.  Recognize any and all indications for a change in the delivery plan, including, but not limited to, breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a Cesarean-section to be performed without delay;

r.  Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s.  Ensure that the nursing staff was prepared for a Cesarean-section;

t.  Ensure that Divine was delivered in a manner that would avoid traumatic injury;

u.  Ensure that Divine was delivered in a timely manner to remove her from the markedly hostile womb environment;

v.  Any and all acts of negligence as identified through additional discovery.

6.      Rita P. Eckenrode, M.D., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a.  Supervise and monitor the care;

b.  Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

c.  Recognize the fact that a trial of labor placed Divine at unnecessary risk;

d.  Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

e.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver Divine in order to preserve fetal well-being;

f.  Ensure Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean-section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

g.  Order and perform a Cesarean-section without unnecessary delay;

h.  Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

i.  Require that the nurses and resident physicians providing care or treatment to the patient consult with her regarding the patients' conditions, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

j.  Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k.  Perform a review of the fetal monitor strips at regular and proper intervals;

l.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m. Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n.  Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o.  Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p.  Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q.  Recognize any and all indications for a change in the delivery plan, including, but not limited to, signs breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a Cesarean-section to be performed without delay;

r.   Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s.   Ensure that the nursing staff was prepared for a Cesarean-section;

t.   Ensure that Divine was delivered in a manner that would avoid traumatic injury;

u.   Ensure that Divine was delivered in a timely manner to remove her from the markedly hostile womb environment;

7.      Any and all physicians, physicians-in-training, and/or physician assistants who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a.   Supervise and monitor the care;

b.   Ensure that Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, received safe and appropriate medical treatment at all times as indicated by their conditions;

c.   Recognize the fact that a trial of labor placed Divine at unnecessary risk;

d.   Recognize the fact that a STAT Cesarean-section was needed in order to ensure the safety and well-being of Divine;

e.   Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver Devine in order to preserve fetal well-being;

f.   Ensure Lucia Chimma Amaechi received adequate information to make an informed refusal or consent for a Cesarean-section, including, but not limited to, a complete disclosure of all risks and/or possible adverse outcomes of a trial of labor;

g.   Order and perform a Cesarean-section without unnecessary delay;

h.   Educate and supervise any and all resident physicians and nurses participating in the care of Lucia Chimma Amaechi and her unborn baby;

i.   Require that the nurses and resident physicians providing care or treatment to the patient consult with her regarding the patient's condition, any abnormal clinical findings, and the proposed plan for treatment at regular and proper intervals;

j.   Examine Lucia Chimma Amaechi and reevaluate her condition and the progress of labor at regular and proper intervals;

k.   Perform a review of the fetal monitor strips at regular and proper intervals;

l.   Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

m.   Heed and appreciate all changes in the patient's condition and/or abnormal patient findings communicated by the nursing staff, including, but not limited to, abnormal progression of labor, fetal heart rate decelerations, decreased or absent variability in the fetal heart rate, and/or fetal tachycardia;

n.   Recognize any signs of fetal intolerance of labor and/or fetal distress, including, but not limited to, variable decelerations, late decelerations, repetitive decelerations, decreased or absent variability, abnormal changes in the baseline fetal heart rate, and/or tachycardia;

o.   Take appropriate action in the presence of non-reassuring fetal heart tones by instituting measures aimed at improving fetal oxygenation and placental perfusion, including, but not limited to, maintaining Lucia Chimma Amaechi in the left lateral position, starting oxygen, and administering intravenous fluids;

p.   Seek reassurance of fetal well-being when the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor;

q.   Recognize any and all indications for a change in the delivery plan, including, but not limited to, breech/transverse presentation, and/or a non-reassuring fetal heart rate pattern, and arrange for a C-section to be performed without delay;

r.   Have the training, experience, and ability to properly manage a complication of labor and delivery such as that experienced by Lucia Chimma Amaechi;

s.   Ensure that the nursing staff was prepared for a Cesarean-section;

t.   Ensure that Divine was delivered in a manner that would avoid traumatic injury to her;

u.   Ensure that Divine was delivered in a timely manner to remove her from the markedly hostile womb environment;

8.      Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

      a.  Select, train and monitor its employees, servants, agents, actual or ostensible, or its staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care as described herein;

      b.  Provide qualified medical staff with the proper training and ability to meet Lucia Chimma Amaechi's needs, including the ability to properly manage her prenatal care in accordance with the standard of care described herein;

      c.  Provide proper obstetric services, including, but not limited to, diagnostic testing and monitoring;

      d.  Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Lucia Chimma Amaechi's needs were being met and that she was provided proper obstetrical care in compliance with the standard of care as described herein;

      e.  Any and all acts of negligence as identified through additional discovery.

9.      Beaumont Health, a duly accredited and licensed heath care institution, by and through their agents, actual and /or ostensible servants and/or employees, when confronted with a patient with the signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

      a.  Select, train and monitor its employees, servants, agents, actual or ostensible, or its staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care as described herein;

      b.  Provide qualified medical staff with the proper training and ability to meet Lucia Chimma Amaechi's needs, including the ability to properly manage her prenatal care in accordance with the standard of care described herein;

      c.  Provide proper obstetric services, including, but not limited to, diagnostic testing and monitoring;

      d.  Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Lucia Chimma Amaechi's needs were being met and that she was provided proper obstetrical care in compliance with the standard of care as described herein;

   e.   Any and all acts of negligence as identified through additional discovery.

10.   Rita P. Eckenrode, M.D., P.C., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

   a.   Select, employ, train and monitor its agents, actual and/or ostensible, servants, employees and/or its staff of physicians, nurses and residents, to ensure they were competent to perform adequate medical care for a patient;

   b.   Ensure that appropriate policies and procedures were adopted and followed;

   c.   Any additional acts of negligence identified through the discovery process.

11.   Tanya Wynn, M.D., P.C., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

   a.   Select, employ, train and monitor its agents, actual and/or ostensible, servants, employees and/or its staff of physicians, nurses and residents, to ensure they were competent to perform adequate medical care for a patient;

   b.   Ensure that appropriate policies and procedures were adopted and followed;

   c.   Any additional acts of negligence identified through the discovery process.

12.   It is my opinion, based upon the available information, as well as my training knowledge, education and experience in Obstetrics and Gynecology, that there was a failure to do those acts listed above, and such omissions constitute violations of the applicable standard of care.

13.   In order to have conformed to the standard of care, the above-named should have done those things listed in paragraphs 3 through 7, and the respective subsections above.

14.   As a direct and proximate result of the above-named violations in the applicable standard of practice or care by the above-named health care providers, Divine Onuwa was not removed from the harmful womb environment in a timely manner and was deprived of the

appropriate supply of blood and oxygen. This resulted in asphyxia and a significant hypoxic-ischemic insult, which caused Devine to sustain severe and permanent neurological damages secondary to hypoxic-ischemic brain injury. Due to the severity of this hypoxic-ischemic injury, Devine developed intraventricular hemorrhages, cerebral palsy, seizures, neurodevelopmental delays, spasticity, severely impaired speech, and dysphagia. She will require continued medical treatment and rehabilitative therapy for the rest of her life.

15.     This opinion is based upon a review of the information to date and may or may not change upon review of additional materials.

_Robert A. Dein, MD_ (signature)

Robert A. Dein, M.D.

Subscribed and sworn to before me on

this _16 th_ day of _July_ , 20_20_

_Barbara A. Colb_ [Name]

Notary Public _WAYNE_ [County]

My Commission Expires: _2/23/2021_

_Acting in the County of Wayne,_
_State of Michigan_
_Pursuant to Executive Order 2020-41_

BARBARA ANN COLBERT
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Feb 23, 2021
ACTING IN COUNTY OF _WAYNE_

**Re:     Devine Onuwa, a minor**

## <u>AFFIDAVIT OF MERITORIOUS CLAIM OF HEIDI SHINN, R.N. BSN, RNC</u>

STATE OF OHIO                          )
                                       )ss.
COUNTY OF DELAWARE            )

I, Heidi Shinn, R.N. BSN, RNC, by this Affidavit, state that during the relevant time period at issue in this matter, I was a licensed and practicing Registered Nurse, and I attest to the following:

1.      I have read the Notice of Intent to File a Claim in this action.

2.      I have reviewed medical records which allow me to reach the opinions contained herein.

3.      Any and all nurses who participated in the care and treatment of Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa,, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

a.  Perform and appreciate a thorough physical assessment;

b.  Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c.  Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d.  Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f.  Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g.  Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h.  Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i.  Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j.  Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l.  Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and late decelerations;

m.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n.  Utilize the chain of command to ensure that a Cesarean-section was performed;

o.  Any and all acts of negligence as identified through additional discovery.

4.  Casey Swisher, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a.  Perform and appreciate a thorough physical assessment;

b.  Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c.  Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f. Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g. Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h. Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i. Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j. Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k. Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l. Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m. Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n. Utilize the chain of command to ensure that a Cesarean-section was performed;

o. Any and all acts of negligence as identified through additional discovery.

5. Teri K. Anderzak, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a. Perform and appreciate a thorough physical assessment;

b. Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c. Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f. Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g. Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h. Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i. Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j. Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k. Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l. Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m. Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n. Utilize the chain of command to ensure that a Cesarean-section was performed;

o. Any and all acts of negligence as identified through additional discovery.

6.      Stacy A. Huggins-Ferguson, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a. Perform and appreciate a thorough physical assessment;

b. Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c. Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d. Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e. Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f. Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g. Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h. Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i. Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and

reviewed the fetal heart monitor tracings at regular and proper intervals;

j.  Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l.  Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n.  Utilize the chain of command to ensure that a Cesarean-section was performed;

o.  Any and all acts of negligence as identified through additional discovery.

7.    Renee A. Miller, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a.  Perform and appreciate a thorough physical assessment;

b.  Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c.  Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d.  Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f.  Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g. Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h. Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i. Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j. Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k. Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l. Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m. Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n. Utilize the chain of command to ensure that a Cesarean-section was performed;

o. Any and all acts of negligence as identified through additional discovery.

8.    Stephanie M. Laroo, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a. Perform and appreciate a thorough physical assessment;

b. Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c. Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d.  Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f.  Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g.  Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h.  Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i.  Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j.  Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l.  Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n.  Utilize the chain of command to ensure that a Cesarean-section was performed;

o.  Any and all acts of negligence as identified through additional discovery.

9.    Melody Cole, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

    a.  Perform and appreciate a thorough physical assessment;

    b.  Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

    c.  Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

    d.  Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

    e.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

    f.  Continuously monitor and document the duration, strength, and frequency of uterine contractions;

    g.  Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

    h.  Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

    i.  Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

    j.  Seek reassurance of fetal well-being when it became apparent that the fetal heart monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

    k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

    l.  Recognize the indications for a change in the delivery plan, including, but not

limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n.  Utilize the chain of command to ensure that a Cesarean-section was performed;

o.  Any and all acts of negligence as identified through additional discovery.

10.  Nicole M. Hamper, R.N., when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her eventual newborn, Divine Onuwa, had a duty to:

a.  Perform and appreciate a thorough physical assessment;

b.  Appreciate the fact that Lucia Chimma Amaechi's signs and symptoms were concerning for fetal distress and/or hostile wound environment;

c.  Discuss the patients' conditions and the plan for treatment with an appropriately trained physician;

d.  Provide adequate and continuous monitoring of the fetal heart rate and monitoring of labor to recognize, appreciate, and respond to the progression of labor;

e.  Consistently and correctly assess, monitor, evaluate, and document baseline fetal heart rate, accelerations, decelerations, and beat to beat variability;

f.  Continuously monitor and document the duration, strength, and frequency of uterine contractions;

g.  Recognize the signs and symptoms of fetal distress and/or intolerance of labor including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, and/or late decelerations, on the fetal heart monitor tracing;

h.  Take the appropriate action by immediately notifying an appropriately trained physician of a non-reassuring fetal heart rate pattern;

i.  Utilize the chain of command to ensure that an appropriate medical specialist personally evaluated Lucia Chimma Amaechi and her unborn baby, and reviewed the fetal heart monitor tracings at regular and proper intervals;

j.  Seek reassurance of fetal well-being when it became apparent that the fetal heart

monitoring patterns were showing signs of distress and/or intolerance of labor, including, but not limited to, performing a scalp and/or acoustic stimulation test;

k.  Institute measures aimed at improving fetal oxygenation and placental perfusion, including but not limited to, repositioning Lucia Chimma Amaechi, starting oxygen, and administering intravenous fluids;

l.  Recognize the indications for a change in the delivery plan, including, but not limited to, minimal to absent variability, bradycardia, lack of accelerations, variable decelerations, late decelerations, and signs or symptoms of placental abruption;

m.  Advise Lucia Chimma Amaechi that a Cesarean-section was needed to deliver her baby and preserve fetal well-being;

n.  Utilize the chain of command to ensure that a Cesarean-section was performed;

o.  Any and all acts of negligence as identified through additional discovery.

11.  Oakwood Healthcare, Inc. d/b/a Beaumont Hospital, Wayne, a duly accredited and licensed health care institution, by and through their agents, actual and/or ostensible, servants and/or employees, when confronted with a patient with the signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, owed a duty to:

a.  Select, train and monitor its employees, servants, agents, actual or ostensible, or its staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care as described herein;

b.  Provide qualified medical staff with the proper training and ability to meet Lucia Chimma Amaechi's needs, including the ability to properly manage her prenatal care in accordance with the standard of care described herein;

c.  Provide proper obstetric services, including, but not limited to, diagnostic testing and monitoring;

d.  Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Lucia Chimma Amaechi's needs were being met and that she was provided proper obstetrical care in compliance with the standard of care as described herein;

e.  Any and all acts of negligence as identified through additional discovery.

12.    Beaumont Health, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Lucia Chimma Amaechi and her unborn baby, had a duty to:

a.  Select, train and monitor its employees, servants, agents, actual or ostensible, or its staff of physicians, to ensure that they were competent to provide proper obstetrical care and comply with the standard of care as described herein;

b.  Provide qualified medical staff with the proper training and ability to meet Lucia Chimma Amaechi's needs, including the ability to properly manage her prenatal care in accordance with the standard of care described herein;

c.  Provide proper obstetric services, including, but not limited to, diagnostic testing and monitoring;

d.  Develop chain of command policies and procedures and educate the staff to utilize the chain of command to ensure that Lucia Chimma Amaechi's needs were being met and that she was provided proper obstetrical care in compliance with the standard of care as described herein;

e.  Any and all acts of negligence as identified through additional discovery.

13.    It is my opinion, based upon the available information, as well as my training knowledge, education and experience in nursing, that there was a failure to do those acts listed above, and such omissions constitute violations of the applicable standard of care.

14.    In order to have conformed to the standard of care, the above-named should have done those things listed in paragraphs  through , and the respective subsections above.

15.    This opinion is based upon a review of the information to date and may or may not change upon review of additional materials.

Heidi Shinn, R.N. BSN, RNC

Subscribed and sworn to before me on ~~2019~~ 2020
this  11th  day of  June

_____ [Name]
Notary Public  FRANKLIN  [County]
My Commission Expires:  July 22, 2023



**MARKELL MERRITT**
Notary Public, State of Ohio
My Commission Expires
July 22, 2023

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

EVERESTUS ONUWA as Conservator for
DIVINE ONUWA, a minor,

            Plaintiffs,

vs.

OAKWOOD HEALTHCARE, INC. d/b/a
BEAUMONT HOSPITAL, WAYNE,
BEAUMONT HEALTH, RITA P.
ECKENRODE, M.D., P.C., TANYA
WYNN, M.D., P.C., LUNA A.
ALKHAFAJI, M.D., TANYA R. WYNN,
M.D., LEELA SURULI, M.D., RITA P.
ECKENRODE, M.D., CASEY K.
SWISHER, R.N., TERI K. ANDERZAK,
R.N., STACY A. HUGGINS-FERGUSON,
R.N., RENEE A. MILLER, R.N.,
STEPHANIE M. LAROO, R.N.,
MELODY A. COLE, R.N., and
NICOLE M. HAMPER, R.N.

Jointly & Severally,

            Defendants.

No. 20-    -NH
Hon.

---

BRIAN J. McKEEN (P34123)
JOHN R. LaPARL (P39549)
McKEEN & ASSOCIATES, P.C.
Attorney for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400

---

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, EVERESTUS ONUWA as Conservator for DIVINE ONUWA,
a minor, by and through their attorneys, McKeen & Associates, P.C., and hereby demand a trial

                     - 1 -

*(Left margin, vertical text:)* 013054-NH FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 10/5/2020 2:04 PM Cynthia DePaulis

*(Vertical text:)* McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

by jury in the above entitled cause of action.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.

_/s/ Brian J. McKeen_
BRIAN J. McKEEN (P34123)
JOHN R. LaPARL (P39549)
Attorneys for Plaintiff
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400

DATED:  October 5, 2020

McKeen & Associates, P.C.  ◆  645 Griswold Street, Suite 4200  ◆  Detroit, MI 48226  ◆  (313) 961-4400